UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE HURLEY, | : | Case No. 3:09-cv-450 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS REVERSED; (2) THIS MATTER IS REMANDED TO THE ADMINISTRATIVE LAW JUDGE UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") 29).

I.

On April 24, 2006, Plaintiff filed an application for DIB alleging that he became disabled on October 12, 2005 due to back, leg, and shoulder pain, prostate cancer, and respiratory problems (Tr. 109-10, 13). The claim was denied initially on July 6, 2006, and upon reconsideration on October 4, 2006. (Tr. 41, 45).

Upon denial of his claims at the state agency levels, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 57, 61, 66). ALJ Thaddeus J. Armstead, Sr. presided over such a hearing on March 30, 2009. (Tr. 24). Plaintiff, represented by counsel, Elizabeth Savino, and a vocational expert, William Braunick, were present and testified at the hearing. (*Id.*).

On April 23, 2009, the ALJ entered his decision finding Plaintiff not disabled because he had the residual functional capacity ("RFC") to perform a restricted range of medium level work for which there were a significant number of jobs. (Tr. 8, 14-9). Plaintiff appealed the ALJ's denial to the Appeals Council. (Tr. 5-7). On September 24, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, Plaintiff commenced this action in federal court pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision.

At the time of the alleged onset of his disability, Plaintiff was a 60 year old male with an eleventh grade education whose past relevant work experience included work as a remodeler and an assistant land surveyor (Tr. 18, 28, 114, 111, 117).

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 12, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

-2-

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; degenerative disk disease of the lumbosacral spine; a history of properly treated prostate cancer; and alcohol abuse (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he requires the following additional nonexertional restrictions: occasional climbing ladders, ropes, or scaffolding; occasional crouching; occasional stooping; and no concentrated exposure to heat, cold, wetness, humidity, generally obnoxious odors, fumes, gases, dust, or poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 24, 1945 and was 60 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has been under a disability, as defined in the Social Security Act, from October 12, 2005 through the date fo this decision (20 CFR 404.1520(g)).

(Tr. 14-20).

On appeal, Plaintiff argues that: (1) the ALJ erred by failing to consider the entire record in assessing both Plaintiff's treating physician's opinion and Plaintiff's testimony regarding his pain; (2) the ALJ erred in his evaluation of Plaintiff's pain and other symptoms; and (3) the ALJ erred by failing to find Plaintiff's shoulder ailments to be a severe impairment.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 CFR § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least 12 months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

For his first assignment of error, Plaintiff asserts that the ALJ's treatment of Plaintiff's treating physician's opinion and his testimony regarding his pain was flawed because the ALJ failed to consider the entire record.

On January 9, 2009, Dr. Schaerer, Plaintiff's primary care physician, completed a form entitled, "Medical Assessment of Ability to Do Work-Related Activities (Physical)." Dr. Schaerer marked that Plaintiff's impairments would affect his lifting and carrying abilities, such that he could not lift or carry any weight even occasionally. When asked what medical findings support this opinion, Dr. Schaerer specifically cited Plaintiff's back and shoulder problems, COPD, and history of prostate cancer as the medical reasons for such limitation. (Tr. 338-9). He marked that Plaintiff's standing and walking abilities were also affected, noting that Plaintiff could do so for only 15 minutes total in an eight hour work day. (Tr. 339). Dr. Schaerer marked that Plaintiff's ability to sit is compromised to the point that he could only do so for a total of 15 minutes during an

eight hour workday, citing Plaintiff's low back pain. (*Id.*). Dr. Schaerer also marked that Plaintiff could never climb, stoop, crouch, kneel, or crawl, and could only occasionally balance. (Tr. 340). He also noted that Plaintiff's ability to reach and to push/pull is affected, citing arthritis of the shoulder and back problems. (*Id.*). Regarding environmental restrictions, Dr. Schaerer marked that Plaintiff was not restricted from heights, moving machinery, or temperature extremes, but was restricted from exposure to chemicals, vibration, dust, noise, fumes, and humidity.[1] (Tr. 341). Dr. Schaerer ultimately opined that Plaintiff does not have the RFC to do even sedentary work on a sustained basis. (Tr. 342).

The ALJ reviewed Dr. Schaerer's records and determined that his opinion that Plaintiff could not do even sedentary work was not entitled to any weight. (Tr. 17). He reasoned that Dr. Schaerer "provided no objective support for his medical opinion," and that the opinion was not proffered until 2009, some four years after Plaintiff's stated onset date, thus diminishing its "probative value as to [Plaintiff's] condition at the time of alleged onset of disability." (*Id.*). Moreover, the ALJ noted that in December 2008, Plaintiff stated that he had not seen Dr. Schaerer "in years," further attenuating the force

---

[1] The yes or no question is somewhat awkwardly or confusingly phrased: "Is exposure to any of the following ENVIRONMENTAL situations restricted as a result of the impairment(s)." Thus, a "yes" answer means Plaintiff should not be exposed to such situations, while a "no" answer means he can be so exposed. It appears Dr. Schaerer answers were mistakenly backwards, as he marked "yes" for exposure heights, moving machinery, and temperature extremes, and no for exposure to chemicals, vibration, dust, noise, fumes, and humidity. Page 8 of Plaintiff's Statement of Errors states: "Dr. Schaerer noted that Mr. Hurley should also avoid environmental irritants." Thus, it is presumed that Dr. Schaerer meant the opposite of what he in fact marked.

-6-

of his opinion. (*Id*). The ALJ concluded that "[a]s Dr. Schaerer's medical opinion is not supported by the medical record and inconsistent with other medical evidence of record, it is afforded little weight." (*Id*.).

Plaintiff admits that the ALJ employed the correct rules in determining the weight due Dr. Schaerer's treating physician opinion, but asserts that the ALJ erred in applying those rules. Plaintiff maintains that the ALJ erred in discounting Dr. Schaerer's opinion because the ALJ held that "[t]he physician provided no objective support for his medical opinion." (Tr. 17). Plaintiff notes that Dr. Schaerer indeed did provide objective support for his opinion when he submitted various treatment notes, including the results of several diagnostic imagining tests. Most importantly, Plaintiff observes that the ALJ did not even reference two important studies performed on August 14, 2007.

The first test allegedly ignored by the ALJ was an MRI of Plaintiff's left shoulder. A radiologist, Dr. Wiand, found a "15-20% widening of the distal clavicle and proximal acromion with subchondral cystic erosions consistent with ongoing [acromioclavicular] joint arthropathy;" "nominal muscle volume loss in the supraspinatus with retraction;" and "a full thickness or diastatic tear in the supraspinatus portion of the [rotator] cuff that measures 3 cm." (Tr. 275). Dr. Wiand concluded and reiterated: "1. Ongoing AC joint arthropathy with moderate stenosis. 2. Full thickness 3 cm diastatic tear with muscle retraction and atrophy as described above." (*Id*.).

The second test was an MRI of the lumbar spine. Dr. Davis, a radiologist,

explained that it showed "degenerative disc disease throughout the lumbar spine;" "disc space narrowing at L3-L4, L4-L5, and L5-S1," and "a small focus of high signal in the posterior aspect of L4-L5 disc consistent with an annular tear." (Tr. 276). At L5-S1, he found "facet and ligamentum flavum hypertrophy," "bilateral neural foraminal narrowing from disc and osteophytes," "a disc bulge of 2-3 mm.," and that "[t]he thecal sac measures 7 mm." (*Id.*). At L4-L5, Dr. Davis observed that "there is moderate facet and ligamentum flavum hypertrophy," "a broad base disc protrusion of 4-5 mm.," "bilateral neural foraminal narrowing from disc and osteophyte complexes," and "[t]he thecal sac is triangulated and stenotic measure approximately 5-6 mm." (*Id.*). At L3-L4, he described that "there is a moderate facet and ligamentum flavum hypertrophy," "bilateral neural foraminal narrowing from disc and osteophytes," "a disc bulge of 2-3 mm.," and "[t]he thecal sac measures 7 mm." (*Id.*). Dr. Davis summed up the findings: "Multilevel degerative changes of the lumbar spine as discussed above. The bony spinal canal overall is congenitally small. There is facet joint hypertrophy and ligamentum flavum hypertrophy as well as disc bulges and osteophytes contributing to further stenosis of the thecal sac and neural foraminal narrowing as discussed above." (Tr. 277).

A close review of the ALJ's decision reveals Plaintiff to be correct regarding the ALJ's omission. Curiously, while the ALJ did cite Exhibit 19F, which contains these documents, he referred only to the report of a different MRI (that of Plaintiff's hip and pelvis, which was fairly normal), while he never referenced, much less discussed, the reports on the following two pages. (Tr. 14, 274).

-8-

The ALJ's failure to consider the two MRI reports is fatal. As the Sixth Circuit has stated:

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)). The *Zblewski* Court continued, in a part not quoted by the Sixth Circuit in *Hurst*: "As the Third Circuit put it in *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981), when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Zblewski* at 78.

A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quotations omitted).

It is impossible for this Court to determine whether the ALJ reviewed the pretermitted MRI reports and dismissed them *sub silentio* or simply did not consider them at all. In either case, the ALJ's failure to grapple with the reports undermines his decision. That the ALJ did not even mention the reports means the ALJ failed to give "good reasons" for dismissing Plaintiff's treating physician's opinion. In short, the ALJ's decision is not supported by substantial evidence.

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-3 (6th Cir. 2007).

Relatedly, Plaintiff also argues that the ALJ's assessment of his pain testimony was flawed by his omission of the 2007 MRI reports. In evaluating Plaintiff's complaints of pain, the ALJ cited the proper regulations[2] and discounted Plaintiff's testimony,

---

[2] However, the ALJ did not cite the Sixth Circuit test for assessing a social security claimant's pain testimony. In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365 (6th Cir. 1991), the court stated:
> Under this standard, our evaluation of subjective complaints of disabling pain is two-pronged. We must determine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
> 1) whether objective medical evidence confirms the severity of t he alleged pain arising from the condition; or,
> 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

believing he could perform a reduced range of medium work with his symptoms. (Tr. 17). Among the reasons proffered to support his analysis, the ALJ wrote: "Diagnostic testing does not support any significant back problems. While a CT scan showed multilevel degenerative disk [sic] disease, there was no evidence of nerve root impingement or spinal canal stenosis (Exhibit 10F, page 1)." (Tr. 18).

As with his assessment of the treating physician opinion, the ALJ failed even to reference the 2007 MRI of Plaintiff's lumbar spine, much less explain why it does not support a disability finding. Furthermore, not only did the ALJ fail to cite the 2007 MRI of Plaintiff's left shoulder, he did not even analyze the effect of Plaintiff's shoulder pain on his ability to work. The ALJ's failure to assess the entire record of medical evidence in evaluating Plaintiff's pain testimony renders his opinion unsupported by substantial evidence. *Jones* at 1370-1.

### III.

The fourth sentence of 42 U.S.C. § 405(g) authorizes the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand empowers the district court to "order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect with caused the [Commissioner's] misapplication of the regulations in the first place." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171,

175 (6th Cir. 1994).

Here, a sentence four remand is appropriate to permit the ALJ to weigh Dr. Schaerer's opinion and Plaintiff's testimony regarding his pain in light of the 2007 MRI reports.

### IV.

For the foregoing reasons, Plaintiff's assignments of error are well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner shall consider the 2007 medical imaging test results in evaluating both the treating source opinion and Plaintiff' pain testimony.

**IT IS SO ORDERED.**

Date: 2/3/11

_Timothy S. Black_
Timothy S. Black
United States District Judge